# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| ANTHONY M. COCHRAN, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, Commissioner of )<br>Social Security, )<br>)<br>Defendant. ) | Cause No. 1:10-cv-1490-WTL-TAB |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Anthony Cochran requests judicial review of the final decision of Defendant

Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"),

denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court rules

as follows.

## I. SUBSTANTIVE BACKGROUND

Plaintiff Anthony Cochran contracted HIV as the result of rape in 1995 and has suffered

from various medical issues since the early 2000s. Specifically, Cochran has sought treatment for

symptoms related to his HIV infection on and off for many years at Wishard Memorial Hospital.

In December 2003, the Wishard neurology clinic noted that Cochran suffered from

"muscle aches, fluctuating and migrating numbness and feelings of quivering muscles," which

was attributed to his HIV.

Between January and March 2004, Cochran was seen by Dr. Bradley Allen three times.

During these visits, Cochran complained of numbness and tingling in his arms and legs and

muscle pain in his lower extremities. Cochran also reported that he continued to suffer from high stress and anxiety and discussed with Dr. Allen his past medications for depression. Cochran agreed to meet with a psychiatrist.

In November 2004, Cochran met with Dr. Allen for a follow-up appointment. Cochran complained of stress and anxiety due to the fact that he had lost his job, but he stated that he had been dealing with the loss fairly well and was not particularly depressed, although he was somewhat anxious. Cochran stated that the ache in his legs and arms worsened in cold weather. In addition, Cochran complained of occasional blotchy skin and pain in his fingers and toes.

On January 4, 2006, Cochran was treated at Wishard Memorial Hospital for symptoms relating to vertigo. He also complained of anxiety and depression.

Cochran was again treated at Wishard Memorial Hospital on April 10, 2006, for HIV symptoms including an upper respiratory tract infection and tingling in his extremities. He also complained of increased fatigue as a result of recently starting new medication, as well as scalp seborrhea.

On July 31, 2006, Cochran met with Dr. Michael Dube and complained of worsened and recurrent shooting pain and numbness in his extremities. Specifically, Cochran had reported that "he would be walking along and he will suddenly have a shooting pain in either [extremity] without preference for one side or the other, and the leg will just go numb suddenly and he will fall." Dr. Allen opined that this could be a result of "possible radiculopathy" as it was not "consistent with distal symmetric polyneuropathy of HIV." Cochran was referred to a neurologist.

Subsequently, in December 2006, Cochran underwent a consultative examination under

the direction of the Social Security Administration. During the examination, Cochran demonstrated a normal gait and was able to squat and walk on his heels and toes. However, there was some stiffness in his wrists and some tenderness along the upper and lower back. Overall, the examining doctor concluded that Cochran "has a history of HIV, chronic nausea, dizziness, vertigo, lower and upper back pain, ADHD and PTSD."

Cochran was also examined by a clinical psychologist on December 19, 2006, at the request of the state agency. The psychologist assessed Cochran at a 55 on the Global Assessment of Functioning scale, and opined "it does not appear as if psychological factors are significantly and adversely affecting his ability to maintain gainful employment." She further opined: "he was able to follow simple instructions and claimed to be more limited by pain issues."

Also in December 2006, Doctors at Midtown Mental Health reported that Cochran was having trouble staying focused, while Dr. Dube and Nurse Practitioner Helen Grubbs reported that Cochran suffered from one to two loose watery bowl movements a day.

In addition to his treatment, Cochran has undergone assessments to determine his functional capacity. On December 28, 2006, Dr. Donna Unversaw's assessment of Cochran's mental functioning capacity revealed very few limitations and that Cochran was capable of carrying out simple, repetitive tasks on a sustained basis. It was also concluded that "the claimant seems able to manage day-to-day stresses, and thus should be able to adapt to changes within the work place." The assessment was confirmed by Dr. Joseph Pressner on May 16, 2007, and Psychologist Walter Rucker on January 26, 2007.

On April 23, 2007, Cochran met again with Nurse Grubbs. Upon examination, Nurse Grubbs indicated that Cochran had erythema in the posterior pharynx with bilaterally enlarged

tonsils and noticeable white foam in the posterior pharynx. In addition, Cochran suffered from enlarged tonsils with chronic ear complaint she opined was caused by antiretroviral therapy. Nurse Grubbs encouraged Cochran to make an appointment with an ENT and to follow-up with his primary care physician with regard to his chronic knee pain. Grubbs noted that Cochran reported three to four loose bowl movements daily and that his energy level had been poor. Lastly, it was noted that Cochran's anxiety seemed to be stable.

Cochran met with Dr. Dube on April 23, 2007. Cochran had been taking antiviral medication for the past three months in an attempt to help with fatigue. Cochran admitted to stopping his antiviral medication because he did not like the side effects. However, his fatigue, the initial reason for the antiviral medication, had improved. Dr. Dube noted that he was "okay with having him off it with CD4 count that high."

On August 27, 2007, Cochran met with Nurse Practitioner Helen Rominger.[1] At this time, Cochran complained of bothersome sinuses, chronic knee pain, neck pain, a cough, loose bowel movements and low energy. Nurse Practitioner Rominger ordered comprehensive lab work assessing his blood cells, CD4 count, and viral load, and magnetic resonance imaging of the knee. Nurse Rominger also encouraged Cochran to continue his treatment for his anxiety and depression.

In October 2007, Midtown Mental Health Dr. William Sparke noted that Cochran was dealing with many stressors, including having to restart AIDS medication and dealing with his roommates. At another October 2007 visit, Cochran reported feeling very anxious, conflicted, and irritable and explained that he had a physical confrontation with his roommates. Cochran

---

[1]The Court assumes that Helen Rominger and Helen Grubbs are the same person.

had also found a single apartment for himself, but was feeling anxious about living alone.

Cochran was referred to Dr. Sadia Saba on November 21, 2007. Cochran complained of neck pain and numbness and tingling pain in his arms. Upon examination, Dr. Saba opined that there "is no evidence of a peripheral neuropathy or cervical radiculopathy."

In November 2007, Nurse Rominger filled out a Medicaid Disability Medical Information in which she stated:

> The patient's conditions, taken together, significantly affect his ability to engage in a useful occupation and is likely to continue. Patient's psychiatric issues and his chronic vertigo (dizzyness) significantly impact his functional abilities.

Furthermore, Nurse Rominger opined that Cochran had the following moderate limitations: standing, walking, lifting, grasping/manipulation, pushing/pulling, bending, squatting, crawling, climbing, reaching above shoulders, driving, and repetitive leg movements. Nurse Rominger felt that Cochran had significant limitations with being around machinery, exposure to temperature and humidity, and exposure to dust, fumes or gases.

Dr. Heather Fretwell also filled out a Medicaid Disability Medical Information in November 2007. She assessed that Cochran is unable to work due to the fact that he suffers from ADHD and cannot take ADHD medication in conjunction with antiviral medication. Dr. Fretwell completed another Medicaid application and Mental Residual Functional Capacity in January 2009, in which she stated that "ongoing deterioration in cognition makes it very difficult for him to engage in learning new tasks, [and] [a]nxiety and frustation in social interactions have resulted in confrontations."

In June 2008, neuropsychologist Brian Miller and psychiatry and neurology professor Daniel Rexroth concluded that Cochran suffers from HIV, anxiety, and bipolar disorder, as well

as a possible learning disorder. They recommended continued treatment with a psychiatrist and psychologist in order to manage his anxiety and depression. They also suggested Cochran repeat neuropsychological testing in twelve months.

Dr. Meher Battiwalla, who practices internal medicine and had treated Cochran since January 2006, examined Cochran in August 2008. He then completed a Medicaid Disability Medical Information on January 13, 2009. Dr. Battiwalla believes that Cochran has moderate limitations with regard to lifting, squatting, crawling, climbing, and repetitive leg movement. Nevertheless, Dr. Battiwalla opined that Cochran "can potentially do sedentary work on days pain and mental health issues are under good condition."

Dr. Battiwalla also completed a Physical Capacities Evaluation on December 15, 2009, at the request of Cochran's counsel. Dr. Battiwalle indicated that the claimant could sit for six to seven hours and stand and walk in combination one to two hours in a eight-hour work day. Dr. Battiwalla concluded that Cochran could not lift or carry items of any significant weight, except insofar as he could frequently lift up to five pounds with his right, could occasionally lift six to ten pounds with his right, and could occasionally carry up to five pounds with his right. The doctor also indicated that Cochran could perform simply grasping, some pushing and pulling of arm controls with his right, and no fine manipulation. Furthermore, Cochran could only occasionally bend, climb, and reach with his right hand, while he could squat, crawl, stoop, balance, kneel, and crouch. Overall, Dr. Battiwalla remarked that Cochran had "multiple medical issues," and that on some days his condition could worsen insofar as he could not even do the indicated activities.

## II. PROCEDURAL BACKGROUND

Cochran initially filed his application for SSI and DIB on September 6, 2006, alleging that he became disabled beginning December 31, 2004, due to HIV and anxiety. His application was denied initially and on reconsideration, whereupon he requested and was granted a hearing before an Administrative Law Judge ("ALJ"). Hearings were held before ALJ Ann Rybolt on May 12, 2009, July 30, 3009, January 6, 2010, and August 6, 2010, at which Cochran was represented by counsel. In addition to Cochran's testimony, the following individuals testified as experts at the hearings: Dr. Mark Farber, M.D., who is board-certified in pulmonology and internal medicine, and who has practiced medicine for 36 years; Dr. Jack E. Thomas, Ph.D., who is licensed in clinical psychology and who has practiced clinical psychology for 26 years; and Ray Burger, a certified Rehabilitation Counselor who has worked in vocational rehabilitation and labor market analysis for 29 years and who testified in the capacity of an impartial vocational expert. The ALJ issued a decision denying Cochran's application on August 25, 2010. Cochran then requested review by the Appeals Council, which denied Cochran's request on November 5, 2010. Cochran then filed this timely appeal.

### III. <u>APPLICABLE STANDARD</u>

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).[2] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

On review of the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala,* 999 F.2d 180, 181

---

[2]The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

(7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into [her] reasoning . . . [and] build an accurate and logical bridge from the evidence to [her] conclusion." *Id.*

## IV. <u>THE ALJ'S DECISION</u>

Applying the five-step analysis, the ALJ found that Cochran was not disabled from December 31, 2004, through the date of her decision on August 25, 2010. At step one of the analysis, the ALJ found that Cochran had not engaged in any substantial gainful activity ("SGA") since December 31, 2004, because Cochran's work activity did not rise to the level of SGA. At steps two and three of the analysis, the ALJ determined that Cochran suffered from a combination of severe and non-severe impairments. Specifically, the ALJ concluded that Cochran's headaches and knee impairment were non-severe. The ALJ further concluded that Cochran had the following severe impairments: Human Immunodeficiency Virus Infection (HIV); cervical and lumbar spine degenerative changes; borderline intellectual functioning (with evidence of actual average intelligence) with mild learning disability in spelling and math; social phobia; attention deficit hyperactivity disorder (ADHD); and depression. Finally, the ALJ determined that none of these severe impairments met or medically equaled a listed impairment.

At step four, the ALJ concluded that Cochran retained the residual functional capacity ("RFC") to perform work involving only simple, repetitive tasks involving minimal contact with

the public and only casual contact with co-workers. Specifically, the ALJ found that Cochran can lift, carry, push and pull ten pounds occasionally and less than ten pounds frequently, he can sit for a total of six hours during an eight-hour workday, and he can stand and/or walk for a total of two hours during an eight-hour workday. The ALJ also found that Cochran can occasionally stoop, crouch, kneel, crawl, and climb stairs and ramps. He cannot balance or climb ladders, ropes, or scaffolding. In addition, the ALJ found that Cochran cannot operate dangerous moving machinery or perform work at unprotected heights.

The ALJ concluded that, given Cochran's RFC, he was not able to perform any past relevant work as an information clerk, light truck driver, or print shop helper because these jobs all involved semi-skilled work. However, considering his age, education, work experience, and RFC, the ALJ found that Cochran was capable of performing other jobs that exist in significant numbers in the regional economy, including representative occupations such as assembler, packager, or inspector. Therefore, the ALJ determined at step five that Cochran was not disabled.

## V. **DISCUSSION**

Cochran advances several objections to the ALJ's decision, each of which is addressed, in turn, below.

### A. Lack of Substantial Evidence to Support Listing Determination at Step Three

Cochran argues that substantial evidence fails to support the ALJ's finding that Cochran was not disabled because his HIV or anxiety did not meet or equal Listing 14.08 or Listing 12.06. The claimant bears the burden to prove that he meets or medically equals each requirement of a listing. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).

*1. Listing 14.08*

10

Cochran argues that substantial evidence does not support the ALJ's decision because he has proved that his condition meets or medically equals Listing 14.08, HIV infection. Listing 14.08 requires documentation of HIV infection and at least one of several sets of symptoms, including, among others, bacterial, fungal, protozoan, and viral infections and certain severe forms of diarrhea. Cochran proceeds in his argument by matching listing requirements with portions of medical records, often simply inserting a parenthetical with the listing requirement number in the text of the record itself. In so doing, Cochran often overlooks that the listing sections he cites require more than the minimum symptomatic showing he has made. For example, Cochran argues that he has demonstrated the requisite fungal infection with two medical records reporting that he has oral candidiasis, specifically on the hard and soft palate. However, oral candidiasis does not qualify as the requisite fungal infection under Listing 14.08B. The listing specifically requires candidiasis "at a site other than . . . oral . . . mucous membranes."[3] The ALJ found no evidence, and indeed Cochran has produced none, to prove that his candidiasis existed other than orally. As another example, Cochran cites a number of medical records reporting that he suffers from "several watery bowel movements a day" and has "frequent diarrhea," which he argues meets Listing 14.08I. Yet that section requires "[d]iarrhea, lasting 1 month or longer, resistant to treatment, and requiring intravenous hydration, intravenous alimentation, or tube feeding." Cochran has made no showing that his diarrhea reached the severity required by this listing.

---

[3] Cochran argues that the hard and soft palate are not mucous membranes, and thus, while oral, satisfy the listing requirement. However, Dr. Farber specifically concluded that Cochran's candidiasis did not meet the listing. Without evidence to support Cochran's assertion, the Court is unwilling to contradict the doctor's determination that Cochran's candidiasis does not qualify under the listing.

In making her determination, the ALJ credited the opinion of Dr. Farber, the internist/pulmonologist who reviewed the evidence, that Cochran does not have any of the requisite symptoms required by the listing. The ALJ found that Dr. Farber's opinion was well-supported by the medical evidence of record. Indeed, at the hearing, Dr. Farber methodically reviewed each listing symptom set line-by-line at counsel's request and noted whether any of the requisite symptoms were present. Given Dr. Farber's thorough review of the listing and the fact that Cochran's symptoms fail to meet the minimum severity, the Court must conclude that the ALJ's decision as to Listing 14.08 is supported by substantial evidence and must be upheld.

*2. Listing 12.06*

Cochran argues that substantial evidence also fails to support the ALJ's determination that his anxiety does not meet or medically equal Listing 12.06, anxiety-related disorders. Listing 12.06 requires a combination of evidence in order to qualify as disabled by reason of an anxiety-related disorder. First, a claimant must demonstrate medical documentation finding at least one of the following: "(1) Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms: (a) Motor tension, (b) Autonomic hyperactivity, (c) Apprehensive expectation, (d) Vigilance and scanning; (2) A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or (3) Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week." Then, a claimant must make one of two showings. The claimant must show anxiety "[re]sulting in at least two of the following: (1) Marked restriction of activities of daily living; (2) Marked difficulties in maintaining social functioning; (3) Marked difficulties in

maintaining concentration, persistence, or pace; or (4) Repeated episodes of decompensation, each of extended duration," or the claimant must show anxiety "resulting in complete inability to function independently outside the area of one's home."

In support of his argument, Cochran cites numerous medical records reporting that he is depressed and anxious, and he also cites two reports by Dr. Heather Fretwell that describe markedly limited functioning in work and social settings. Cochran then asserts that the ALJ "ignore[d] all of the claimant's evidence proving disability." This is not the case. The ALJ specifically addressed Dr. Fretwell's findings before rejecting them because Dr. Fretwell based her opinion of Cochran's ability to function on a combination of his physical and mental limitations, but Dr. Fretwell did not treat him, nor was she qualified to assess his physical limitations.

Furthermore, the ALJ closely examined Cochran's medical records, including those tending to establish disability in the form of an anxiety-related disorder. The ALJ noted that in March of 2004, Cochran was considered "extremely" anxious, and in June 2006, while his ADHD was being treated, his anxiety and depression were not being addressed. The ALJ considered that, while the "claimant's anxiety condition continued to remain stable according to treatment records and the claimant's own statements in April 2007," he did report various situational stressors and requested to switch medications in attempts to achieve an all-day therapeutic effect. The ALJ considered the results of a Neuropsychological Examination performed at Indiana University Department of Psychiatry, which indicated that Cochran has a mild learning disability in spelling and mathematics. In spite of a invalid test result on the Minnesota Multiphasic Personality Inventory (MMPI-II) due to what the examiners stated was

an exaggeration of symptoms, the ALJ requested the individual test results so that Dr. Thomas could conduct an independent review of the results. Dr. Thomas then concluded that while overall the test was invalid, he did not necessarily agree with the examiner's interpretation that Cochran had engaged in symptom exaggeration. The ALJ also considered an April 2010 mental status examination in which the psychologist diagnosed the claimant at Axis I with Major Depressive Disorder; Post-Traumatic Stress Disorder; ADHD by history; Nicotine Dependence; and Marijuana Abuse, reportedly in remission. The ALJ considered the psychologist's finding that Cochran experienced mild difficulty in social, occupational, or school functioning. Upon review of the record, the ALJ found significant that Dr. Thomas testified that the anxiety and depression from which Cochran suffered did not meet the requirements of Listing 12.06.

The ALJ focused specifically on whether Cochran suffered marked restriction or difficulty in daily living, social functioning, maintaining concentration, persistence or pace, or had experience repeated episodes of decompensation. In doing so, she considered the medical evidence of record. Because Cochran does not need help with cooking, cleaning, doing laundry, or shopping, the ALJ concluded that his abilities, combined with the medical evidence, confirmed that he was only mildly affected in his activities or daily living. The ALJ did find moderate limitation in the claimant's social functioning, as Cochran reported problems getting along with others. Cochran was described as "extremely anxious" in social situations during his mental status examination in 2010, but the ALJ noted that he also maintained good eye contact during this examination. The ALJ rated his limitation as moderate, however, because Cochran leaves his house on a fairly regularly basis to attend appointments. She also similarly found a moderate limitation in Cochran's ability to maintain concentration, persistence, or pace on the

basis of his rating of low average intelligence and learning disabilities in spelling and math,

combined with his ability to think logically in an organized and sequential manner. Based on this

evidence, the ALJ found that Cochran did not experience marked restrictions or difficulties in

these areas. The ALJ further found no evidence of an extended inability to function outside a

highly supported living environment. In this way, the ALJ properly articulated her reasoning,

which is substantially supported by the medical evidence of record, and the Court must therefore

uphold the ALJ's decision.

### 3. Rejection of Contrary Medical Evidence

Cochran additionally asserts that the ALJ's decision is contrary to the evidence provided

by his treating physicians. Specifically, Cochran argues that the ALJ erroneously entirely

ignored or arbitrarily rejected treating physician evidence tending to prove disability under

Listing 14.08 and 12.06. In support of his argument, Cochran produces a laundry list of medical

records from his treating physicians that he claims were either "entirely ignored or arbitrarily

rejected" by the ALJ.[4] "A treating physician's opinion is entitled to controlling weight if it is

well supported by medical findings and not inconsistent with other substantial evidence in the

record." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). However, if the treating

physician's opinion is inconsistent with substantial evidence in the record, the ALJ need not give

---

[4] Counsel simply dumps large sections of text from Cochran's medical records into his brief, and then later summarily lists the medical reports that were "ignored or arbitrarily rejected" without explaining the legal significance of any of these reports. As counsel has been cautioned at least twice before, *see Poston v. Astrue*, 2010 WL 987734 at *8 (S.D. Ind. 2010); *Reese v. Astrue*, 2009 WL 499601 at *5 (S.D. Ind. 2009), this method of argument is not argument at all. Furthermore, counsel's citation to a list of cases, without explanation or analysis, is just that: a list, and not legal argument. The Court will not hunt through these cases and craft counsel's argument for him.

deference to that opinion. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). Furthermore, as previously noted, an ALJ need not discuss every piece of evidence in her disability decision. *See Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir. 1995). Rather, the ALJ must simply "provide some glimpse into [her] reasoning . . . [and] build an accurate and logical bridge from the evidence to [her] conclusion." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

The ALJ explicitly considered Cochran's treating physician's opinions. For example, she discussed at length Dr. Angela Marshall's December 2006 mental status examination, which described Cochran as "alert, fully oriented, adequately groomed, with a depressed and anxious mood and somewhat inappropriate affect with nervous laughing." The ALJ noted that Dr. Marshall assessed Cochran with only "moderate symptoms" or moderate limitations in social, occupation or school functioning. She also relied on Dr. Rudolph's mental status examination of Cochran, which reported that Cochran's ability to understand, remember, and carry out instructions was not affected and found a "moderate" limitation in Cochran's ability to interact appropriately with supervisors, co-workers and the public.

The ALJ also considered several treating physician's opinions before articulating her reasons for rejecting them. The ALJ noted Nurse Practitioner Rominger's Medicaid application, stating that Cochran's psychiatric problems pose the greatest obstacle to his ability to work. In rejecting Nurse Rominger's opinion, the ALJ explained that the nurse's speciality is infectious diseases and not psychology or psychiatry, and that this statement was contrary to her own medical notes on a previous occasion. Finally, the ALJ rejected Nurse Rominger's opinion in favor of that of Dr. Thomas, who is board certified in clinical psychology. The ALJ also considered Dr. Fretwell's January 2008 medicaid application before declining to give Dr.

Fretwell's opinion persuasive weight. Dr. Fretwell's opinion, the ALJ explained, that Cochran could not maintain employment due to his ADHD was unsupported by the medical evidence of record; particularly, there were no records indicating that Cochran had a particularly severe case of ADHD. Furthermore, the ALJ noted, Dr. Fretwell based her opinion of Cochran's ability to function on a combination of his physical and mental limitations, but she did not treat him, nor was she qualified to assess his physical limitations.

The ALJ also discussed Dr. Battiwalla's February 2009 medical opinion before rejecting it, in part based on Dr. Battiwalla's own admission that he had not seen Cochran since August 2008. Also significant for the ALJ was the fact that Dr. Battiwalla erroneously identified Cochran as having Bipolar Disorder, which was incorrect. The ALJ also noted internal inconsistencies in Dr. Battiwalla's report, which stated that Cochran could not perform even sedentary work due to his physical and mental impairments, yet rated Cochran's physical limitations as "moderate" in five categories and "not significant" in all other categories and stated that Cochran could do sedentary work "on days pain and mental health issues are under good control." The ALJ further rejected Dr. Battiwalla's December 2009 report because the indicated restrictions were not supported by any medical evidence revealing any weakness in Cochran's extremities, and other statements about Cochran's side effects and chronic pain were contrary to the medical evidence.

Given the ALJ's detailed analysis of the opinions of Cochran's treating physicians, as well as her well-grounded and specific reasons for declining to accord persuasive weight to these opinions, the Court must find that the ALJ did not entirely ignore or arbitrarily reject Cochran's treating physicians' opinions; rather, she built an accurate and logical bridge from the evidence

to her conclusion and therefore her decision must be upheld.

## B. Credibility Determination

Cochran next argues that the ALJ's credibility determination is erroneous because the ALJ failed to make findings concerning two of the seven factors required to be considered when rejecting evidence regarding a claimant's subjective symptoms pursuant to SSR 96-7p. Ruling 96-7p sets forth the process by which ALJs evaluate the credibility of an individual's statements about pain and subjective symptoms.

An ALJ's assessment of the claimant's credibility is entitled to special deference and is not grounds for reversal and remand unless it is "patently wrong." *E.g.*, *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). In assessing the credibility of the claimant, the ALJ need not cite findings on every factor, but the ALJ must articulate the reasons for her decision in such a way as to "make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Brindisi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003) (citing SSR 96-7p).

Cochran specifically alleges that the ALJ ignored factor 6 – "any other measures other than treatment the individual uses or has used to relieve pain or other symptoms" – and factor 7 – "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms" – apparently basing his argument on a "close reading" of the ALJ's decision, which he argues does not consider factors 6 and 7. While the ALJ is not required to recite findings on every element, the ALJ nevertheless clearly made findings regarding each element in her decision in this case.

The ALJ noted that "[r]egarding treatment and other measures, other than medication,

taken for relief of pain or other symptoms, none are supported by the medical evidence of record." R. at 21. A finding of no evidence is nevertheless a finding. The final factor to be considered is merely a catchall for "any other factors," and the ALJ made a finding with regard to this factor as well: "[o]ther factors relevant to his credibility includes that he received unemployment for six months after his job at Indiana University ended. In applying for unemployment compensation, he represented to the relevant state authorities that he was available to work and actively seeking employment."[5] R. at 21-22.

Cochran also asserts that the ALJ's credibility determination was contrary to SSR 96-7p because it was based solely on objective medical evidence. As a preliminary matter, Cochran points to no subjective evidence that the ALJ specifically failed to consider. And, in fact, the ALJ did not rely *solely* on objective medical evidence. She considered his daily activities and duly noted qualitative assessments outlined in Cochran's medical records, as well as Cochran's own statements about his health as they were memorialized in his medical records. In addition, the ALJ noted that

> during his appeal, [Cochran] complained of ear, throat infection, and allergies with a tonsillectomy in June 2007. At his consultative physical examination, he complained of pain in his upper and lower back with difficulty bending and lying flat. He described his pain as constant with a constant ache all over his body and joints with worsening in the past two years. He reported dizziness and vertigo since underwent an adenoidectomy.

Finally, the ALJ considered the extent to which Cochran's medications caused side-effects that could bear on his ability to function.

---

[5] Cochran argues that it was error to consider his application for unemployment because the standard for unemployment benefits is different. Cochran cites no support for this assertion, much less explains why the different standard precludes consideration of his application in making a credibility determination.

The ALJ's credibility determination is further erroneous, so Cochran argues, because it is perfunctory. This is plainly not the case. The ALJ engaged in a lengthy and detailed analysis of the claimant's medical records and the opinions of his treating physicians before concluding that it did not support his alleged symptoms at the frequency and severity he alleged. In doing so, the ALJ made specific findings, explaining that Cochran's HIV had been considered non-progressive during the relevant time period and he responded well to antiretroviral therapy when he chose to take it, while noting that Cochran was often noncompliant with this therapy.[6] The ALJ further determined that Cochran's degenerative disc disease had not caused frequent severe pain and had responded to treatment. Because the ALJ's credibility determination was substantially supported by evidence in the record, and the ALJ properly articulated her reasons for finding Cochran's testimony about the frequency and severity of his symptoms less than fully credible, the ALJ's determination must be upheld.

---

[6] Cochran raises a new argument on this issue in his reply brief, arguing that the ALJ further failed to comply with SSR 96-7p by failing to investigate why Cochran was noncompliant. Such investigation is necessary because an individual may not take prescription medication because the side effects are less tolerable than the symptoms or because the individual cannot afford the treatment. Yet arguments raised for the first time in reply are waived. *E.g.*, *Amerson v. Farrey*, 492 F.3d 848, 852 (7th Cir. 2007). Nevertheless, substantial evidence supports the ALJ's consideration of this factor in making her credibility determination, as the ALJ noted the following: Record evidence showed that in December 2006, side effects from his medications were "tolerable." In addition, while he discontinued antiretroviral therapy in April 2007 due to side effects, he later resumed taking antiretroviral medication in late 2007. Side effects he experienced when he resumed taking his medication resolved in approximately a month. While he again stopped taking his medication because he "was tired of taking the medication" in September 2008, he resumed the medication in October 2008 and he reported no significant side effects in February 2009. In May 2009, testing confirmed medication noncompliance, and Cochran resumed his antiretroviral regimen and denied any side effects thereafter. Furthermore, while Cochran testified at the hearing that there were some medications he could not afford, the medications to which he referred were for treatment of his ADHD, vertigo, and leg pain.

## C. Failure to Consider Cochran's Limitations at Step Five

Finally, Cochran argues that the ALJ erred when she determined that he was not disabled because he could perform some jobs. The source of this error, Cochran argues, is omitting limitations due to his "quite severe fatigue, weakness, neuropathy, pain, dizziness and anxiety" from his RFC, and is thus an argument that the ALJ's RFC determination was in error. In evaluating a claim, the ALJ must give full consideration to all of a claimant's documented impairments. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). However, in crafting Cochran's RFC, the ALJ specifically considered these limitations:

> While it was the opinion of Dr. Farber that the claimant is capable of working at the light exertional level, I have assigned him a sedentary [RFC] to accommodate any pain the claimant may experience from his degenerative spinal changes. The [RFC] is also designed to accommodate any fatigue he may experience from his medication or HIV status. The limitations to simple, repetitive tasks accommodate both the claimant's borderline intellectual functioning (and learning limitations regarding spelling and math) as well as any lack of concentration he may experience due to his depression, ADHD, and social phobia. The restriction that he have minimal contact with the public and only casual contact with co-workers is designed to accommodate his social phobia. . . . I have restricted the claimant from climbing ladders, ropes and scaffolding and have precluded him from working at unprotected heights and from operating dangerous moving machinery to accommodate any drowsiness he may experience.

The foregoing analysis, buoyed by other discussion in the ALJ's decision, clearly demonstrates that the ALJ fully considered all of Cochran's documented impairments in determining that he was not disabled. The ALJ's carefully-crafted RFC is fully supported by the record and therefore did not precipitate an erroneous evaluation of the jobs that Cochran could perform. The ALJ's decision that Cochran was not disabled in accord with this analysis must therefore be upheld.

## VI. CONCLUSION

As set forth above, the ALJ in this case satisfied her obligation to articulate the reasons for her decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is **AFFIRMED**.

SO ORDERED:  12/19/2011

_William T Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification